**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeanine Liberti, et al., | No. CV-17-02813-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Plaintiffs are Jeanine and Michael Liberti, individually and as successors in interest to their deceased son, Matthew Liberti ("Liberti"). Defendants are the City of Scottsdale ("Scottsdale"), Scottsdale Police Officers Wilmer Fernandez-Kafati and Marjorie Bailey ("the Officers"), and Scottsdale Police Chief Alan Rodbell. At issue is Defendants' Motion for Summary Judgment. (Doc. 30.) The motion is fully briefed and the Court heard oral argument on July 19, 2018. For the following reasons, Defendants' motion is granted.

## **BACKGROUND**

This case arises out of a fatal police-involved shooting. On July 27, 2017, Liberti reached over the counter at a Chompie's restaurant in Scottsdale, dialed 911, and hung up after being confronted by the manager. (Doc. 31 ¶¶ 23-26, 30-38, 41.) When Scottsdale Police Dispatch called back, the manager described Liberti and explained that the caller had left the store without incident. (¶¶ 34-36.) Dispatch sent the Officers to perform a

well-check shortly after 5:00 PM. (¶¶ 41, 56.)

When Fernandez-Kafati arrived at the scene, a shopper waved him down to point out Liberti and say he was "acting erratic . . . he looks weird; I don't know what's wrong with him." (¶ 47.) The Officers approached Liberti, who was pacing outside the entrance of a Sprouts Farmers Market near Chompie's. (¶ 46.) When asked if he needed help, Liberti admitted to feeling "weird." (¶¶ 66-67.) As captured by Bailey's On Body Camera ("OBC"), Liberti was pacing, fidgeting, ignoring questions and commands, and intermittently swaying closer to the Officers. (¶¶ 49-55, 58-61, 67-68, 72-93.) Liberti's pacing and swaying grew increasingly close to Bailey, who eventually insisted Liberti sit. (¶¶ 90-92.) By the time Bailey insisted, Liberti had ignored or refused twenty-two police commands to sit down. (¶¶ 92–93.) When Liberti ignored Bailey's command, Bailey grabbed Liberti's arm to force him to the ground. (¶ 92.) Liberti jerked away, briefly grappled with the Officers, and fled toward the nearby Courtyard Shoppes ("the Shoppes"). (¶¶ 92-104.)

The Officers pursued Liberti to the Shoppes. (¶¶ 104-07.) Although both parties agree that the Officers drew their firearms and Liberti drew his knife upon arriving at the Shoppes, they disagree on the order. Defendants contend that Liberti drew his knife and the Officers drew their firearms in response. (¶¶ 109-11.) Plaintiffs argue that the Officers drew their firearms while Liberti was empty-handed, but concede Liberti eventually drew his knife, rendering the disagreement immaterial. (Doc. 43 ¶¶ 110-11.) The Officers demanded Liberti "get down" and drop the knife. (Doc. 31 ¶ 113.) Liberti yelled "Please! Shoot me in the head!" (¶ 114.) Bailey holstered her firearm and drew her TASER. (¶ 118.) Liberti then began moving past the Shoppes downstairs to a covered parking lot with the Officers in pursuit. (¶¶ 121-24.)

The Officers found Liberti downstairs still holding his knife. (¶ 125.) After again commanding Liberti to sit and drop his knife, Bailey warned "Get down now or I'm going to tase you!" (¶ 129.) Liberti refused, saying "Don't tase me, shoot me!" (¶ 130.) Bailey tased Liberti. (¶ 137.) Liberti collapsed, but soon recovered. (¶¶ 138-40.) Liberti

slashed his neck with his knife several times and asked the Officers to shoot him. (¶ 141.) Moments later, Liberti stood up. (¶ 149.)

Liberti then ran in Fernandez-Kafati's direction with the knife in his hand. (¶ 149.) Fernandez-Kafati retreated backward while continuing to aim his firearm at Liberti. (¶ 154.) Liberti advanced several feet before Fernandez-Kafati fired twice, striking Liberti. (¶ 160.) Fewer than two seconds elapsed between Liberti standing and Fernandez-Kafati firing. (¶ 162.)

Liberti was pronounced dead at the scene, having suffered gunshot wounds to his abdomen and right leg, as well as seven self-inflicted neck wounds. (¶¶ 183-190.) The medical examiner confirmed that, at the time of his death, Liberti tested positive for "high level[s] of methamphetamine/amphetamine in cardiac blood and liver." (¶ 180.)

Plaintiffs brought this action in November 2017, alleging state law and constitutional torts, and claims under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. Defendants move for summary judgment on all counts.

## **LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to establish the existence of material factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Summary judgment, however, cannot be denied based solely on "[s]urmise, conjecture, theory, speculation and an advocate's suppositions." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

**I. Section 1983 Claims Against the Officers (Count III)**

Plaintiffs bring two claims under 42 U.S.C. § 1983. First, they allege that the Officers violated Liberti's Fourth Amendment rights by unconstitutionally seizing him and using excessive force during the seizure. Second, they allege that the Officers violated Liberti's and Plaintiff's Fourteenth Amendment right to due process by "interfering in their familial relationship by causing Liberti's untimely death." (Doc. 28 ¶ 103.) Defendants argue that summary judgment is warranted because the undisputed evidence shows there was no constitutional violation and, in the alternative, the Officers are entitled to qualified immunity.

Section 1983 creates a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983 is not a source of substantive rights but merely a method for vindicating federal rights established elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Qualified immunity insulates government actors from suit under § 1983 unless the

plaintiff can show (1) that the actor violated a statutory or constitutional right by acting unreasonably under the circumstances, and (2) that the right was "clearly established" at the time of the challenged conduct. *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). Because establishing a constitutional violation is a threshold issue for both the § 1983 and qualified immunity inquiries, the Court will first assess Plaintiffs' Fourth and Fourteenth Amendment claims.

### A. Fourth Amendment

Plaintiffs allege that detaining Liberti was an unreasonable seizure, and grabbing, tasing, and shooting Liberti to subdue him constituted excessive force. The Court addresses each in turn.

#### 1. Detention

To the extent that Plaintiffs argue the Officers' investigatory stop of Liberti—as opposed to the physical grabbing itself—violated Liberti's Fourth Amendment rights, the Court disagrees. A police officer may seize a person for a brief investigatory stop if the officer has reason to believe the person has broken the law. *See Terry v. Ohio*, 392 U.S. 1, 23-27 (1968). Under Arizona law, an officer may detain a mentally ill person if there is probable cause to believe the person is a danger to himself or others. A.R.S. § 36-525. "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009). Officers may also detain individuals under their community caretaking function to ensure the safety of the public or the individual. *See Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004).

Here, a reasonable jury could only find that the Officers were reasonable in their belief that Liberti's jittery, confused demeanor, complaints of feeling ill, and 911 call indicated that he might have been under the influence of a controlled substance. *See Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1094-95 (9th Cir. 2006) (noting that a

detainee mumbling, disobeying commands and perspiring heavily created "a fair probability he had committed a crime"). Finally, the Officers would have been within their rights as community caretakers to detain Liberti for his own safety. *Oceanside*, 360 F.3d at 1082. No reasonable jury could find that the Officers' investigatory stop violated Liberti's Fourth Amendment rights.

### 2. Excessive Force

Plaintiffs claim that three acts of force violated Liberti's Fourth Amendment rights—Bailey grabbing Liberti to force him to the ground, Bailey tasing Liberti, and Fernandez-Kafati shooting Liberti. Defendants argue that the Officers acted reasonably, entitling them to summary judgment.

When assessing a police officer's use of force, the Court asks "whether the force that was used to effect a particular seizure was reasonable." *Gregory v. Cty. of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008). To determine if force was reasonable, the Court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness determination is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and must allow "for the fact that police officers are often forced to make split-second judgments . . . about the amount of force necessary in a particular situation." *Id.* at 396-97.

Before addressing each discrete use of force, the Court will address Plaintiffs' frequent reference to Liberti's mental illness. Plaintiffs argue that Liberti was "obviously" in mental crisis, and that his mental illness should bear on the Court's determination of reasonableness in every instance. It is true that an officer's awareness of a suspect's mental illness may be considered in a reasonableness determination. Plaintiffs, however, offer no evidence that it was—or should have been—apparent to the Officers that Liberti was mentally ill, whereas there is substantial evidence that Liberti

was both apparently and actually under the influence of methamphetamine. Plaintiffs' argument that Liberti was "in crisis,"[1] and that the Officers "knew" Liberti was mentally ill, is purely speculative. Reasonableness is determined from the perspective of an officer on the scene without the benefit of hindsight, and here there is no evidence that the Officers were warned that Liberti was mentally ill before the incident or that they should have known his erratic behavior was attributable to some unidentified mental illness as opposed to intoxication.

### a. Grabbing

Plaintiffs allege that Bailey grabbing Liberti by the arm to direct him to a seated position—and the ensuing force used to prevent him from fleeing—was excessive. "[T]he degree of force used by the police is permissible only when a strong government interest compels the employment of such force." *Drummond v. City of Anaheim,* 343 F.3d 1052, 1057 (9th Cir. 2003) (internal quotation and citation omitted). Here, the Officers had reasonable suspicion and probable cause to lawfully stop Liberti, as discussed above, and using physical coercion to effect a stop is not excessive so long as it is reasonable. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

Plaintiffs claim that Liberti was "mostly compliant" during his detention, but this allegation is unsupported by evidence. Liberti ignored police commands several times. (Doc. 31 ¶ 93.) Liberti's refusal to obey police commands, combined with his apparent intoxication, created a government interest in subduing him before he harmed himself or the public. Bailey was not required to use the least intrusive degree of force possible to pursue that interest, but still did so by escalating from verbal commands to empty-hand coercion.[2] (Doc. 31 ¶ 92); *Gregory*, 523 F.3d at 1107. Once Liberti began struggling

---

[1] Other that Plaintiffs' vague description of Liberti as "in crisis," there is no competent evidence of what kind of mental illness, if any, Liberti was experiencing at the time of the incident.

[2] The Scottsdale Police Department uses four escalating levels of force: verbal commands, empty hand tactics, intermediate weapons (TASER), and deadly force. (Doc. 43 ¶ 52.)

- 7 -

against Bailey's empty-hand coercion, he was resisting arrest and posed an immediate threat to the Officer's safety. Thus, no reasonable jury could find Bailey's use of force in grabbing and later attempting to restrain Liberti was objectively unreasonable.

### b. Tasing

Plaintiffs allege that Bailey tasing Liberti was excessive. A TASER used in probe mode is an intermediate or medium level of force that must be justified by the government's interest. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). It is not unreasonable for a police officer to use a TASER, even without warning, on suspects who fail to obey police commands and create a "difficult, tense and uncertain" situation.[3] *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding officer's use of TASER without warning was justified when suspect in traffic stop repeatedly refused to comply with commands); *Roell v. Hamilton Cty.,* 870 F.3d 471, 481 (6th Cir. 2017) (citing *Cockrell v. City of Cincinnati*, 468 Fed. App'x 491, 495 (6th Cir. 20212) as "recognizing numerous cases holding that an officer's use of a TASER against a plaintiff who is actively resisting arrest by physically struggling with, threatening, or disobeying officers is not a violation of the plaintiff's clearly established Fourth Amendment rights, even if the plaintiff is suspected of committing only a misdemeanor").

When Bailey deployed her TASER, she had already attempted verbal commands and empty-hand coercion. (Doc. 31 ¶ 92.) Liberti at that point was wielding a knife, had assaulted Bailey while resisting arrest, and still was apparently under the influence of methamphetamine. The government's interest in subduing Liberti, who was continuing to disobey police commands and becoming a significant threat to the Officers and the public, had become substantial. No reasonable jury could find that Bailey's use of force in tasing Liberti was objectively unreasonable.

### c. Deadly Force

Plaintiffs allege that Fernandez-Kafati's use of deadly force against Liberti was

---
[3] Bailey did, however, give Liberti warnings to drop the knife and "get down now or I'm going to 'tase' you." (Doc. 31 ¶ 129.) Under *Graham*, a warning weighs in favor of reasonableness.

- 8 -

excessive. "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The Constitution, however, "permit[s] the use of deadly force against a suspect who poses . . . an imminent threat of danger to a police officer or others." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003).

By the time Fernandez-Kafati fatally shot Liberti, verbal commands, empty-hand coercion, and TASER incapacitation had all failed to subdue Liberti. According to Bailey's OBC, Liberti collapsed after being tased, slashed his neck, screamed "Kill me, motherfucker!", stumbled to his feet, screamed "Kill me!", and lunged in Fernandez-Kafati's direction with knife in hand, ultimately coming within five feet of the Officer's position.[4] (Doc. 31 ¶¶ 137-156.) Plaintiffs argue that Liberti was trying to escape along the parking structure's wall. (Doc. 43 ¶ 150.) It is unclear if Liberti was intentionally threatening Fernandez-Kafati by moving in his direction with knife in hand, but under *Graham*, the Court must view the incident from the perspective of a reasonable officer on the scene rather than guess at Liberti's motivations. Based on Bailey's OBC, a reasonable officer would not have known that Liberti was attempting to escape. But even taking Plaintiffs' version of events as true, Liberti was armed with a dangerous weapon and, at the very least, trying to evade arrest by fleeing into a crowded shopping center. Based on the undisputed evidence and the totality of the circumstances, it was reasonable for Fernandez-Kafati to believe that Liberti posed an immediate threat to himself or the public. Thus, no reasonable jury could find Fernandez-Kafati's use of force in shooting Liberti was objectively unreasonable. Defendants therefore are entitled to summary judgment on Plaintiffs' Fourth Amendment claim.

---

[4] Suspects within 21 feet of a police officer are within "the zone of danger," which is considered the distance that can be closed by an attacker before the officer can react to protect herself. *See Prostrollo v. City of Scottsdale*, 676 F. App'x 678, 679 (9th Cir. 2017) (holding an officer acted reasonably in shooting mentally disturbed man wielding pool cue who was within 17 feet of officers).

**B. Fourteenth Amendment**

Plaintiffs allege that the Officers violated Liberti's and Plaintiffs' Fourteenth Amendment rights to due process, specifically by "interfering in their familial relationship by causing Liberti's untimely death." (Doc. 28 ¶ 103.) A police officer using deadly force violates the Fourteenth Amendment if he acts with "a purpose to harm without . . . legitimate law enforcement objectives." *Zion v. Cty. of Orange*, 874 F.3d 1072 (9th Cir. 2017). Legitimate law enforcement objectives include "stopping a dangerous suspect." *Id.* The Court has determined that a reasonable jury could only find the Officers acted with the legitimate objective of stopping Liberti, a dangerous suspect, from harming the Officers or the public. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' Fourteenth Amendment claim.

**II. Vicarious § 1983 Claims (Count III)**

Plaintiffs allege that the City of Scottsdale and Rodbell violated Plaintiffs' rights by, among other things, failing to implement appropriate policies on the use of deadly force. Yet no reasonable jury could find that the Officers committed a constitutional or statutory violation while interacting with Liberti. Neither the City of Scottsdale nor the Rodbell may be liable under § 1983 without an underlying statutory or constitutional violation. *See Tatum*, 441 F.3d at 1100. Defendants are entitled to summary judgment on this claim.

**III. Negligence & Wrongful Death (Counts I & II)**

In Count I, Plaintiffs allege that the Officers breached a duty of care owed to Liberti by failing to carry out their duties in a reasonably prudent manner. They claim grabbing and tasing Liberti to effect an arrest was an unreasonable use of force in violation of A.R.S. § 13-3881(B), constituting negligence per se. In Count II, Plaintiffs allege that the Officers' negligence caused Liberti's death, and under A.R.S. § 12-611 they are entitled to injuries and losses stemming from that death. Counsel for both parties, however, agreed during oral argument that Counts I and II necessarily fail if the Court grants summary judgment to Defendants on Count III based on a finding of

objective reasonableness. The Court therefore grants summary judgment in favor of Defendants on both counts because a reasonable jury could only find that the Officers acted reasonably under the circumstances.

**IV. Title II of the ADA & Rehabilitation Act of 1973 (Count IV)**

Plaintiffs allege the City of Scottsdale and Rodbell breached their obligations under the ADA and the Rehabilitation Act by, among other things, failing to provide police services that were appropriate in light of Liberti's disability. At oral argument, Plaintiffs' counsel expanded on the allegation, propounding that Defendants discriminated against Liberti by failing to dispatch officers trained to deal with mentally ill suspects. Counsel suggested that dispatching Scottsdale's "Police Crisis Intervention Specialists" might have prevented unnecessary escalation leading to the use of force. Plaintiffs' counsel conceded, however, that Count IV would necessarily fail if the Court grants summary judgment to Defendants on Count III based on a finding of objective reasonableness. The Court therefore grants summary judgment for Defendants on Count IV.

## **CONCLUSION**

Based on the undisputed evidence, no reasonable jury could conclude that the Officers acted unreasonable under the circumstances. Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 30) is **GRANTED**. The Clerk shall enter judgment in favor of Defendants, terminate all remaining motions and deadlines, and close this case.

Dated this 10th day of September, 2018.

Douglas L. Rayes
United States District Judge